*M'Crady* for appellant.  *Preston* for the appellee.

——

*THOMPSON, SYNDIC OF JOHNSTONE v. NEWTON ET AL.*
*SAME vs. ROWE ET AL.*

APPEAL FROM THE COURT OF THE PARISH AND CITY
OF NEW-ORLEANS.

These actions were instituted by the plaintiff, as syndic un-
der a forced surrender, of certain creditors of J. G. John-
stone, to constrain the defendants to yield up, for the bene-
fit of all the creditors, the proceeds of certain drafts, bills of
exchange, &c. transferred to them by the insolvent, to the
fraud of the creditors generally by such illegal preference.

It appeared in evidence that the defendants had received
of the insolvent, on the eve of his absenting himself, divers
drafts, &c. in order to protect the said defendants against
their endorsements for him for near the amount received.

The case of Johnstone vs. Thompson, syndic, annulling the
proceedings of the creditors and restoring the property, being
introduced, the court below nonsuited the plaintiff in both
cases, and he appealed.

*Strawbridge* and *M'Crady* for appellant.

1st.  The court cannot, in this suit, set aside the judgment

in the suit for a forced surrender; that judgment must stand until reversed by legal course.

2d. The party is actually insolvent, and had absconded.

3d. The action in avoidance of acts in fraud of creditors, may be exercised either personally or as represented by a syndic; and as Johnstone is now a party, judgment will be given according to the proof.

*Preston* for the appellee.

1st. The evidence shows that Johnstone was not an absconding debtor, and so the parish judge has decided; the plaintiff, therefore, is incapacitated to sue as syndic.

2d. The appellees were not made parties to the failure, and are, therefore, not bound by the proceedings.

3d. The transfers by Johnstone were for a good and valid consideration, at the time.

*Mathews, J.,* delivered the opinion of the court.

In the two first of these cases the plaintiff, as syndic, claims from the defendants certain properties, rights and credits which, he alleges, were tranferred to them by the insolvent, at an improper time and out of the ordinary course of business, to the injury and in fraud of the rights of the mass of creditors. The last suit is brought by the debtor, whose property was placed in the possession of the syndic, under a forced surrender, to cause to be annulled the proceedings by which his commercial books and other effects were transferred to the defendant as syndic, and to have them restored to him.

The proceeding which gave rise to these suits, was commenced in pursuance of the sixth section of an act of the legislature, passed in 1826, entitled "An act supplementary to an act relative to the voluntary surrender of property, &c." It is expressed in the following terms: "If any merchant or trader abscond or conceal himself, in order to avoid

the payment of his debts, it shall be lawful for three of his creditors, or more, to apply to any competent judge, &c. to obtain from the said judge an order authorizing the sequestration of the property of the said merchant, trader, &c."

The proceedings in the case prosecuted under this section of the act ended in the sequestration of Johnstone's property, a forced surrender, and appointment of a syndic. Afterwards the debtor appeared; brought suit, as above stated, alleging their illegality, and consequent nullity, as being unfounded in fact; and claims restitution of his property.

The evidence adduced in the different cases, which is made applicable to all, shews clearly that the plaintiff in the last action was in insolvent circumstances at the time he left the state, in July, 1830. But the court below seems to have been of opinion that the fact of his absconding, or concealing himself, was not established by satisfactory testimony, and gave judgment in his favor, and also judgments against the syndic in his suits against Newton and Co., and Row and Went; from all of which he appealed. The judge *a quo*, we think, proceeded regularly in first taking into consideration the case of Johnstone vs. Thompson; for the decisions in the other cases may be viewed as corollaries of the judgment proper to be rendered in this.

The sequestration and forced surrender were based on the belief that the debtor absconded, or concealed himself, in order to avoid the payment of his debts. The main attempt, on the part of the creditors who provoked this surrender, as appears by the testimony of the cause, was, to prove an act of absconding according to the true intent and meaning of the law. But in this, we are of opinion with the court below, they have failed. The general-received meaning of the word *to abscond*, we believe to be the act of a person who leaves any particular place clandestinely, or of one who conceals or hides himself. According to the latter signification, which appears to be that accorded to it by lexicogra-

phers, it is synonymous with the word *to conceal,* and, consequently, the same effect should be given to the section of the law under consideration, if only one of the words had been used by the legislature.

The testimony affords no evidence of concealment, nor of clandestine departure from the city. Nothing shews that the debtor did not lay himself open to arrest in the ordinary mode of proceding, by civil process, to the very moment of his departure. He went openly on board the steam boat which was about to take him from the country, and was seen there by a great number of persons. * To those with whom he had conversed on the subject of his going, he represented as a reason for taking that step, the dulness of business in New Orleans at that time, and the probability of its being so for some succeeding months of the year; that his intention was to return, having a prospect of obtaining a place as bookkeeper with some merchant in this place.

That he had failed in business on his own account, cannot be doubted, according to the evidence; and that he adopted measures to secure his friends, who had assisted to set him up, is, perhaps, equally clear. The morality of such conduct, *in foro consciencic,* is not for us to investigate: it is believed to be contrary to our municipal regulations, and thus far may be considered as immoral. But it does not appear that he acted in such a manner as to authorize a sequestration and forced surrender of his estate, by absconding or concealment, in terms of the law. This case differs little from that of Kennedy & Duchamp vs. Devlin.—8. *N. S. p.* 150.

It is therefore ordered, adjudged, and decreed, that the judgments of the Parish Court rendered in these several cases be affirmed, with costs.